UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| William D. Moore and Yvonne Moore, | ) | |
| | ) | |
| plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 596 |
| | ) | |
| Washington Mutual Bank, | ) | Honorable Ruben Castillo |
| | ) | |
| defendant. | ) | |

**WASHINGTON MUTUAL BANK'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

This lawsuit arises from a $237,000 mortgage loan to plaintiffs that has

been in default for nearly five years.  Plaintiffs say they side-stepped two prior attempts

by Washington Mutual Bank to foreclose, and are defending a third foreclosure case, by

arguing the Bank failed to meet HUD meet-and-confer requirements.  Plaintiffs

followed their foreclosure defenses with an administrative discrimination claim against

the Bank for damages, now dismissed, and this federal lawsuit, originally brought as

three federal and seven state law claims, also dismissed.  Plaintiffs' amended complaint

reasserts one dismissed count, for violation of the Real Estate Settlement Procedures Act,

and a new claim, under the Fair Housing Act.

The amended complaint should be dismissed because no proper RESPA

claim, or Fair Housing Act claim, has been stated.  First, as to RESPA, the amended

complaint does not properly allege that plaintiffs' letters were qualified written requests

for information regarding the servicing of their loan, and even if the letters met that standard, the Bank appropriately responded.  Second, the Fair Housing Act claim also fails because plaintiffs do not allege the Bank discriminated based on race or any other specified factor, or that the Fair Housing Act even applies to post-default foreclosure situation.  Finally, even if proper federal claims had been stated, the RESPA claim and the Fair Housing Act actual damages claim should be dismissed, because no recoverable damages have been alleged.

For those reasons, as more fully set forth below, the amended complaint should be dismissed.

## STATEMENT OF FACTS[1]

1.      This lawsuit arises from a 2002 mortgage loan in the amount of $237,661, between plaintiffs and Washington Mutual Bank, and from certain related state court and administrative proceedings. (Am. Cplt. ¶¶ 4-16, 35; Exh. A.)

2.      Plaintiffs allege their mortgage fell into "arrears" in December 2003. (Am. Cplt. ¶ 6.)  In 2004, the Bank filed a state court foreclosure lawsuit.  (Id. ¶ 13.)

3.      Notwithstanding their admitted failure to pay, plaintiffs obtained a dismissal of the foreclosure lawsuit because, plaintiffs say, the Bank failed to comply with certain regulations promulgated by the Department of Housing and Urban Development ("HUD").  (Am. Cplt. ¶¶ 15-16.)  Those HUD regulations required the Bank to attempt certain pre-foreclosure contacts with plaintiffs, regarding the mortgage loan,

---

[1]    Because Washington Mutual Bank has moved to dismiss the amended complaint, the following allegations from the amended complaint are taken as true for purposes of the motion.  Airborne Beepers & Video v. AT&T Mobility, 499 F.3d 663, 664 (7th Cir. 2007).

its delinquency, and possible repayment terms. (Id.)

4.    More than a year later, in December 2005, the Bank filed a second state court foreclosure lawsuit against plaintiffs. (Am. Cplt. ¶ 25.) Again plaintiffs moved to dismiss, asserting the Bank's failure to comply with HUD meet-and-confer regulations. (Id. ¶¶ 26-27.) In June 2006 this lawsuit, like its predecessor, "was dismissed because of [the Bank's] failure to comply with HUD's servicing requirements." (Id. ¶ 29.)

5.    On October 4, 2006, after plaintiffs had received a letter from the Bank's attorneys stating plaintiffs were "approximately $7,593.00 in arrears on their mortgage," plaintiffs sent a "qualified written request" to the Bank, seeking "information regarding the purported reinstatement and regarding the amount of charges purportedly due [the Bank]." (Am. Cplt. ¶¶ 31, 32.) The Bank's attorney responded to the request by supplying, among other things, a "ledger of account." (Id. ¶¶ 33-34.) From the "ledger of account," plaintiffs determined that the Bank had "advanced approximately $77,000 to [plaintiffs'] account, on August 26, 2006." (Id. ¶ 34.)

6.    Next, on October 13, 2006, plaintiffs filed a "Fair Housing Complaint" with HUD regarding the Bank, which was "transferred" to the "Illinois Department of Human Rights." (Am. Cplt. ¶¶ 35, 36, 38.) In that proceeding the Bank further addressed the $77,000 advance, stating it advanced those funds to plaintiffs' account, in order to "take away any technical defenses that [plaintiffs] would have to a foreclosure complaint." (Id. ¶ 37.) The Illinois Department of Human Rights dismissed plaintiffs' complaint on December 27, 2007.

7.      During the proceedings before the Illinois Department of Human Rights, the Bank also "produced" a letter "to protect itself from its loan servicing failures," which plaintiffs contend was "inaccurate." (Am. Cplt. ¶¶ 38-40; Exh. B.)

8.      On January 29, 2008, one day after this lawsuit was filed, plaintiffs sent a second "qualified request" to the Bank.  (Am. Cplt. ¶ 43.)  Plaintiffs again requested "clarification as to how [the Bank] arrived at the payment amounts" previously supplied by the Bank's attorneys, and asked for "copies of agreements . . . and documents relating to the purported advancement of funds." (Id.)

9.      On March 20, 2008, plaintiffs sent another letter, "asking for a response to their January 29, 2008 letter.  (Am. Cplt. ¶ 45.)  Plaintiffs sent a third letter, against requesting the same information, eight days later, on March 28, 2008.  (Id. ¶ 46.)

10.     On May 1, 2008, the Bank's attorney responded to plaintiffs' requests for information.  (Am. Cplt. ¶ 47.)  The contents of the attorney's letter are not alleged, but the letter did not "provide a reason and/or explanation for the loan and payment amounts." (Id.)

11.     Plaintiffs bring two federal claims, based on "federal question" jurisdiction (28 U.S.C. § 1331).   (Am. Cplt. first page, unnumbered paragraph.)

12.     First, plaintiffs contend the Bank violated the Real Estate Settlement Procedures Act, by "failing to meet the requirements of 12 U.S.C. Section 2605 regarding servicing and responding to qualified written requests."  (Am. Cplt. ¶ 53.)

13.     Second, plaintiffs bring a claim against the Bank pursuant to the "Federal Fair Housing Act," 42 U.S.C. §§ 3605, 3617. (Am. Cplt.  ¶¶ 56-60.)  According to

plaintiffs, who allege their "race is black (African-American)," the entire course of conduct by the Bank, as alleged the amended complaint -- the foreclosures, contacts with plaintiffs during the foreclosures, the Illinois Department of Human Rights proceedings, plus "rude and intimidating comments" to plaintiffs -- are violative of the Act.  (Id. ¶¶ 58-59.)

14.     Plaintiffs seek identical compensatory damages under both claims for the following:  (1) "time reviewing and responding to and requesting documentation from [the Bank] and its agents;" (2) "expenses (including but not limited to litigation costs and attorney fees) defending against [the Bank's] actions and otherwise asserting their rights;" and (3) "much embarrassment and . . . mental anguish and stress as a result of [the Bank's] actions."  (Id. ¶¶ 54, 60.)

For the following reasons, the amended complaint should be dismissed.

## ARGUMENT

### I.     COUNT I FAILS TO STATE A RESPA CLAIM.

Plaintiffs' RESPA claim is based on four alleged requests for information, in October 2006, and January and March 2008.  First, plaintiffs say they sent a "qualified written request" in October 2006, seeking "information regarding the purported reinstatement and regarding the amount of charges purportedly due [the Bank]," and that the Bank responded with "correspondence" and a "ledger of account."  (Am. Cplt. ¶¶ 32-34.)  Plaintiffs were able to use the "ledger of account" to determine that the Bank had "advanced approximately $77,000 to [plaintiffs'] account, on August 26, 2006." (Id.¶ 34.)   Plaintiffs say the Bank did not provide "clarification as to where the [$77,000]

originated," but then allege the Bank stated, to the Illinois Department of Human Rights, that the funds were advanced to "take away [plaintiffs'] technical defenses . . . to a foreclosure complaint." (Id.¶¶ 33, 37.)

Plaintiff's second request for information, sent on or about January 29, 2008, was recycled from their October 2006 request. Plaintiffs again sought "clarification" regarding the Bank's advancement of funds, and asked for "copies of agreements . . . and documents relating to the purported advancement of funds." (Am. Cplt. ¶ 43.) Next, plaintiffs sent two follow-up letters requesting the same information, for the third and fourth times, on March 20 and March 28, 2008, and the Bank's attorney responded on or about May 1, 2008. (Id.¶¶ 45-47.) Plaintiffs do not describe the contents of the attorney's response, but contend the letter did not "provide a reason and/or explanation for the loan and payment amounts." (Id.¶ 47.)

Those allegations do not state a viable claim. RESPA requires a "loan servicer" to investigate and respond to a borrower's "qualified written request" for information within sixty days. 12 U.S.C. § 2605(e)(2). A "qualified written request" in turn requires "written correspondence" that "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "Servicing" is defined as the receipt and payment of periodic loan, escrow and other payments. 12 U.S.C. § 2605(i)(3); 24 C.F.R. § 3500.2. A "qualified written request" does not automatically trigger RESPA obligations, when the request is sent to a lender's attorney. See In re Payne, ___ B.R. ___, No. 01-23896, slip op. at 23-24 (Bankr. Kan. May

6, 2008) ("RESPA does not designate lender's counsel as an authorized recipient of a qualified written request. Before an attorney is to be held accountable as an agent by virtue of a statute which which does not itself pre-authorize an attorney as the lender's agent in this context, the attorney should be placed on notice that he or she is being approached in that capacity").

Here, the amended complaint squarely negates any RESPA violation. The Bank's attorney sent plaintiffs a letter that showed an arrearage balance of $7,593. Plaintiffs, apparently surprised at the diminutive arrearage figure, having made no payments for nearly three years on a $237,000 loan, requested information regarding the "purported reinstatement and regarding the amount of charges purportedly due [the Bank]."[2] The Bank supplied "correspondence" and a "ledger of account" which showed the Bank absorbed the bulk of plaintiff's deficiency, approximately $77,000, on August 26, 2006. Instead of paying the reduced loan arrearage and reinstating their mortgage loan, plaintiffs initiated discrimination proceedings, during with the Bank allegedly acknowledged it advanced the funds to "take away [plaintiffs'] technical defenses . . . to a foreclosure complaint." Plaintiffs made their so-called RESPA request, and received their answer. Plaintiffs may not like the answer -- a strange reaction, given their alleged success in avoiding an enormous default loan balance -- but plaintiffs cannot parlay those allegations into a valid RESPA claim.

---

[2]   Plaintiffs' continued reference in the amended complaint to "reinstatement" of their mortgage loan (Am. Cplt. ¶ 32) makes no sense, because plaintiffs never allege the loan was placed in status that would have requred "reinstatement."

Nor can plaintiffs create a RESPA infraction where none exists, by alleging they repeated their request for the same information three more times, after the Illinois Department of Human Rights dismissed their complaint. Plaintiffs admit the Bank responded to their October 2006 "qualified written request" with "correspondence" and a "ledger of account" that revealed the advancement of funds. Plaintiffs' later alleged submissions of three more RESPA requests, asking for the same information, plus "documents,"is not actionable. Research reveals no requirement for duplicative responses to repeated RESPA requests for the same information.[3]

Even if duplicative responses were required, moreover, the amended complaint still would fail, because plaintiff sent three successive requests without waiting for the sixty-day response period to run. Plaintiffs' January 29, 2008 request would have required a response on March 31, 2008 at the earliest.[4] Instead of waiting the required amount of time, plaintiff sent two more, premature demands, on March 20 and March 28, 2008. The Bank sent a timely response to plaintiff's March 28, 2008, final demand for information. Again, plaintiffs have no RESPA claim to assert.

Finally, even though the amended complaint establishes the Bank's compliance with RESPA, that statute should not even apply to plaintiffs' requests for information in the first place. RESPA requests are confined to information relating to

---

[3]  Plaintiffs do not contend their account was "in error" within the meaning of RESPA, 12 U.S.C. § 2605(e) (1)(B). Instead, plaintiffs appear to rely on the "other information sought by the borrower" provision (id.) for their RESPA claim.

[4]  The Bank's sixty-day period for responding runs from receipt of the request. The amended complaint does not allege when the request was received -- only that it was "sent" on or about January 29, 2008. (Am. Cplt. ¶ 43.) In any event, a sixty day period, beginning on January 29, would end on March 31.

the "servicing" of a mortgage loan, such as the making and crediting of mortgage and
escrow payments.  See <u>Morequity v. Naeem</u>, 118 F. Supp. 2d 885, 900-01 (N.D. Ill. 2000)
(dismissing Section 2605 claim even though plaintiffs alleged a "qualified written
request;" "[n]one of the irregularities alleged . . . relate in any way to the "servicing" of
the loan, as that term is defined in the statute"); 12 U.S.C. § 2605(i)(3) ("'servicing' means
receiving any scheduled periodic payments from a borrower pursuant to the terms of
any loan, including amounts for escrow accounts described in section 2609 of this title,
and making the payments of principal and interest and such other payments with
respect to the amounts received from the borrower as may be required pursuant to the
terms of the loan").

      Here, as shown above, plaintiffs sought no information regarding their
payments, which plaintiffs admit they stopped making in December 2003.  Instead,
plaintiffs requested information -- apparently from foreclosure counsel, not the Bank
directly -- regarding the Bank's alleged reduction of plaintiff's substantial deficiency.
That is not a request for "servicing" information covered by 12 U.S.C. § 2605(i)(3) -- that is
a foreclosure-defense-and-other-litigation-discovery issue.  See <u>also</u> <u>In re Payne</u>, slip op.
at 23-24 (letter to attorney would require special notice that request is made pursuant to
RESPA).  For those reasons Count I should be dismissed for failure to state a RESPA
claim.

## II.    COUNT II FAILS TO STATE A FAIR HOUSING ACT CLAIM.

Count II should be dismissed because plaintiffs have failed to state a Fair Housing Act claim against Washington Mutual Bank.  Under the Act, no person may discriminate against any person in "making available" a "residential real estate transaction," on grounds of "race, color, religion, sex, handicap, familial status, or national origin:"

> Discrimination in Residential Real Estate-Related Transactions
>
> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. 3605(a).  A "residential real estate-related transaction" is defined as the selling, brokerage or appraisal of residential property, or the making of a loan for purchase, construction and repair:

> As used in this section, the term "residential real estate-related transaction" means any of the following:
>
> (1)    The making or purchasing of loans or providing other financial assistance--
>
>> (A)    for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
>> (B)    secured by residential real estate.
>
> (2)    The selling, brokering, or appraising of residential real property.

42 U.S.C. 3605(b).

Here, plaintiffs take virtually every allegation regarding the Bank in the amended complaint, lump the allegations together, and contend the Bank, in some undescribed way, violated the Fair Housing Act.  According to plaintiffs, the Bank transgressed the Act by (1) requiring plaintiffs to meet with attorneys at the courthouse and at the attorneys' offices; (2) failing to comply with HUD meet-and-confer regulations; (3) failing to reach a "workout" with plaintiffs; (4) providing "false and/or inaccurate documentation" to the Illinois Human Rights Commission; (5) denying plaintiffs "access to information regarding the loan account" starting in 2004; (6) filing the foreclosure lawsuits, attempting to serve court papers, and sending mail to plaintiffs; and (7) making "rude and intimidating comments" to "intimidate and harass so [plaintiffs] would not assert their rights."  (Am. Cplt. ¶ 59(a)-(j).)[5]

Plaintiffs' attempt to invoke the Fair Housing Act here must be rejected, for two basic reasons.  First, plaintiffs do not even allege -- nor could they allege, consistent with Rule 11 -- that Washington Mutual Bank discriminated against plaintiffs on the basis of "race, color, religion, sex, handicap, familial status, or national origin."  (Am. Cplt. passim.)  Instead, plaintiffs allege they are "black (African-American)," recite a laundry list of alleged acts of misconduct, then invoke the Act's statutory buzz words.  Simply put, plaintiffs cannot bring a discrimination claim based on race, without alleging the Bank engaged in racial discrimination.  Because plaintiffs failed to make that core,

---

[5]    Plaintiffs' broad-based accusations have resulted in squarely conflicting factual allegations.  For example, on the one hand, plaintiffs allege the Bank violated the Fair Housing Act by refusing to have a face-to-face meeting with plaintiffs, as mandated by HUD regulations.  (Am. Cplt. ¶ 16(a), 59(d).)  On the other hand, plaintiffs claim the Bank improperly required plaintiffs to have a face-to-face meeting, in violation of the Fair Housing Act .  (Id. ¶ 59(a).)

required allegation, Count II should be dismissed.

Second, plaintiffs' Fair Housing Act claim is independently defective because none of the Bank's alleged actions constitutes a refusal to engage in a "residential real estate-related transaction," within the meaning of the Act. To the contrary, the Bank plainly made the subject mortgage loan to plaintiffs in the first place, in 2002. (Am. Cplt. ¶ 4.) Plaintiffs do not allege they sought to refinance with the Bank, or that the Bank's alleged post-default activities concern the "making or purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1). Instead, plaintiffs point to a litany of alleged post-default activities, and argue the Bank's objective was to "intimidate and harass so that [plaintiffs] would not assert their rights." (Id. ¶ 59(a)-(j).) Those allegations do not state a Fair Housing Act claim. Cf. Simms v. First Gibraltar Bank, 83 F.3d 1546, 1559 (5th Cir. 1996) ("[t]he FHA . . . prohibits a lending institution from using race, or any other prohibited factor, as a basis for making a lending decision").[6]

Finally, even if plaintiffs had pled a proper Fair Housing Act claim, all alleged acts that occurred prior to May 16, 2005 are time-barred. The Fair Housing Act has a two-year limitations period, but excludes "any time during which an administrative proceeding under this title was pending . . . based upon such

---

[6]   Although a court observed long ago that a Fair Housing Act claim could include a "racially discriminatory foreclosure," see Harper v. Union Savings Ass'n, 429 F. Supp. 1254, 1258-59 (N.D. Ohio 1977), here the amended complaint contains no such well-pled claim. See Harper, 429 F. Supp. at 1256-59 (specifying allegations sufficient to state claim for "racially discriminatory foreclosure").

discriminatory housing practice."  42 U.S.C. § 3613 (a)(1)(B).[7]  Plaintiffs filed their Fair

Housing Act claim on July 29, 2008.  (Am. Cplt. Ct. II.)  Assuming for purposes of this

motion that plaintiffs' Illinois Department of Human Rights complaint was a qualifying

"administrative proceeding" under the Fair Housing Act, then the two year period

excludes the time that proceeding was pending, from October 13, 2006 to

December 27, 2007 (Am. Cplt. ¶¶ 35, 41.)  Therefore, all acts prior to May 16, 2005 (see <u>id.</u>

¶¶ 7-19) are time-barred.

      For those reasons, plaintiffs' Fair Housing Act claim should be dismissed.

### III.     PLAINTIFFS FAIL TO ALLEGE RESPA DAMAGES OR FAIR HOUSING ACT ACTUAL DAMAGES.

      Finally, even if plaintiffs could overcome the above fatal pleading

obstacles, the RESPA claim and Fair Housing Act actual damages claim should be

dismissed because plaintiffs have failed to allege recoverable damages.  According to

plaintiffs, they have suffered the exact same damages, word-for-word, based on the

Bank's alleged RESPA and Fair Housing Act violations:

> As a result of [the Bank's] actions, [plaintiffs] have been damaged by way
> of time reviewing and responding to and requesting documentation from
> [the Bank] and its agents.  [Plaintiffs] have also incurred expenses
> (including but not limited to litigation costs and attorney fees) defending
> against [the Bank's] actions and otherwise asserting their rights.  [Plaintiffs]

---

[7]   Although "[t]he Federal Rules of Civil Procedure provide that a statute of limitations defense is an affirmative defense which should be set forth in 'pleading to a preceding pleading,'" a limitations defense is "an appropriate ground for dismissal if it 'clearly appears on the face of the complaint.'" <u>E.E.O.C. v. Park Ridge Public Library</u>, 856 F. Supp. 477, 480 (N.D. Ill. 1994) (citation omitted).  In other words, "dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads [himself] out of court by alleging facts that are sufficient to establish the defense."  <u>Hollander v. Brown</u>, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citation omitted), <u>cert. denied</u>, 127 S. Ct. 1912 (2007).  Here, the amended complaint's allegations more than sufficiently demonstrate that a Fair Housing Act claim, based on events occurring prior to May 16, 2005, is time-barred.

have also suffered much embarrassment and have been caused to suffer mental anguish and stress as a result of [the Bank's] actions.

(Am. Cplt. ¶¶ 54, 60.)[8]

Those allegations do not set forth recoverable damages under RESPA, which requires a causal link between the asserted violation and the alleged harm.  See 12 U.S.C. § 2605(f)(1)(A) ("[w]hoever fails to comply with any provision of this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure"); Byrd v. Homecomings Financial Network, 407 F. Supp. 2d 937, 945-46 (N.D. Ill. 2005) (plaintiff failed to state a RESPA claim because plaintiff "does not and cannot allege actual damage").  Plaintiffs cannot recover damages for "reviewing and responding to and requesting documentation from [the Bank] and its agents," because no authority exists for the proposition that RESPA damages include time spent preparing the qualified written request or review of the response.   Nor can plaintiffs recover damages for "expenses" incurred  in "defending against [the Bank's] actions and otherwise asserting their rights," because any alleged RESPA violation did not require a "defen[se]" or "assertion [of] rights."  Finally,  plaintiffs' reference to "mental anguish and stress" also fails.  The amended complaint clearly attributes those alleged emotional damages to the filing of the foreclosure lawsuits, the service of process, and the "junk mail" plaintiffs received (e.g. Am. Cplt. ¶¶ 17, 30), not to the alleged non-receipt of a response to plaintiffs' request for information.

Plaintiffs' fallback attempt to recover the exact same damages, through

---

[8]    Plaintiffs additionally seek punitive damages in their Fair Housing Act claim, which are not the subject of this motion to dismiss.  See 42 U.S.C. § 3613(c)(1) ("aggrieved person" may recover "actual and punitive damages" based on a "discriminatory housing practice").

their Fair Housing Act claim, also fails.  Like the RESPA damages claim, plaintiffs cannot

attribute the preparation and review of alleged RESPA correspondence, or expenses

incurred in "defending against [the Bank's] actions and otherwise asserting their rights,"

to any alleged act of discrimination by the Bank.  Similarly, plaintiffs blame their

emotional damages on the foreclosure lawsuits, service of process, and junk mail, not on

any alleged discriminatory act.  See Simovits v. Chanticleer Condominium Ass'n, 933 F.

Supp. 1394, 1406 (N.D. Ill. 1996) (Fair Housing Act allows for recovery of "actual damages

suffered by the plaintiff;" "[i]n order for [plaintiffs[ to recover for emotional injuries, a

causal connection must exist between their alleged injuries and the [defendant's]

discriminatory conduct").

      For those additional reasons, Count I should be dismissed, and Count II's

claim for actual damages should be dismissed.

### CONCLUSION

      For the above reasons, Counts I and II of the amended complaint should

be dismissed.

            WASHINGTON MUTUAL BANK

            By: _Glenn Heilizer_

                One of its attorneys

Glenn E. Heilizer
Law Offices of Glenn E. Heilizer
Five North Wabash Avenue
Suite 1304
Chicago, Illinois 60602
312-759-9000

Dated:  August 15, 2008