UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM D. MOORE and YVONNE MOORE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FEDERAL DEPOSIT INSURANCE CORPORATION, ) <br> as Receiver of Washington Mutual Bank, ) <br> JPMORGAN CHASE BANK, N.A., ) <br> as Acquirer of Certain Assets and Liabilities of ) <br> Washington Mutual Bank from ) <br> the Federal Deposit Insurance Corporation, ) <br> ) <br> Defendants. ) | No. 08 C 596 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

William D. Moore and Yvonne Moore (collectively "Plaintiffs") originally filed this suit against Washington Mutual Bank (the "Bank"), alleging that the Bank violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* (R. 27, Pls.' First Am. Compl.) Since the filing of the First Amended Complaint, the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver of Washington Mutual Bank, replaced the Bank as the party defendant.[1] (R. 41, Min. Order.) In addition, Plaintiffs subsequently added JPMorgan Chase, N.A. ("JPMorgan") as a defendant. (R. 54, Min. Order.) Presently before the Court is FDIC's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 45, Mot. to Dismiss.) For the reasons

---

[1] On September 25, 2008, the Office of Thrift Supervision appointed the FDIC as Receiver for Washington Mutual Bank. (R. 39, Mot. to Substitute Def., Ex. A.) That same day, the FDIC accepted the appointment for the purpose of liquidation pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(6)(B). (*Id.*, Ex. B.)

stated below, the motion is granted.

## RELEVANT FACTS

On May 22, 2002, Plaintiffs entered into a mortgage agreement. (R. 27, Pls.' First Am. Compl. ¶¶ 1, 4.) In December 2003, they fell behind on their mortgage payments. (*Id.* ¶ 6.) Plaintiffs allege that on January 25, 2004, they sent the Bank financial information in an attempt to arrange a loan workout.[2] (*Id.* ¶¶ 7, 9.) On February 25, 2004, Plaintiffs received a letter from the Bank acknowledging the receipt of their January 25 request for a loan workout; this letter also requested additional documentation for processing their request. (*Id.* ¶ 8.) A little over two weeks later, the Bank sent Plaintiffs another letter stating that they would need a "Profit and Loss Statement" to complete a review of their application (*Id.* ¶ 10.) After receiving this letter, Plaintiffs attempted to speak with a Bank representative, but only managed to leave a message on a representative's voice mail. (*Id.* ¶ 6.)

On March 29, 2004, the Bank filed a foreclosure action against Plaintiffs in the Circuit Court of Cook County. (*Id.* ¶ 13.) After the foreclosure suit was dismissed on November 8, 2004, Plaintiffs allege that they forwarded the previously requested financial documentation to the Bank, including: (1) a financial worksheet; (2) 2003 tax returns; (3) bank statements; (4) documentation regarding "leases for rental properties"; and (5) pay stubs. (*Id.* ¶¶ 16, 18.)

Plaintiffs aver that it took the Bank nine months to respond to their submission of additional financial documentation. (*Id.* ¶ 20.) This response came in the form of a letter from the Bank proposing a meeting with Plaintiffs. (*Id.*) On August 6, 2005, Plaintiffs wrote to the

---

[2] A loan workout involves the "act of restructuring or refinancing overdue loans." Black's Law Dictionary 1638 (8th ed. 2004).

2

Bank and indicated their willingness to meet. (*Id.* ¶ 21.) After Plaintiffs were unable to arrange a meeting with the Bank over the phone, they sent a second letter which contained a list of potential meeting dates. (*Id.*) Plaintiffs allege that despite their many efforts to meet with the Bank, a meeting between the parties never materialized. (*Id.* ¶ 22.)

On December 28, 2005, the Bank filed a second foreclosure action in the Circuit Court of Cook County. (*Id.* ¶ 25.) This action was dismissed on June 1, 2006; Plaintiffs allege that the dismissal was based on the Bank's failure to comply with Department of Housing and Urban Development ("HUD") loan servicing requirements. (*Id.* ¶ 29.) In September 2006, Plaintiffs received a letter from the Bank's attorneys indicating that they were approximately $7,593.00 in arrears on their mortgage. (*Id.* ¶ 31.) After receiving this letter, Plaintiffs, on October 4, 2006, sent what they allege to be a "qualified written request" to the Bank seeking "information regarding the purported reinstatement [of the mortgage loan] and regarding the amount of charges purportedly due [to the Bank]." (*Id.* ¶ 32.) Plaintiffs admit that the Bank replied to their letter, but they allege that the correspondence failed to adequately respond to their "qualified written request." (*Id.* ¶ 33.) Based on a ledger they received along with this correspondence, Plaintiffs concluded that the Bank, without notice or explanation, had advanced approximately $77,000 to their account on August 28, 2006. (*Id.* ¶ 34.)

Based on the Bank's allegedly discriminatory conduct, Plaintiffs filed a complaint with HUD on October 13, 2006. (*Id.* ¶ 35.) This complaint was subsequently transferred to the Illinois Department of Human Rights ("IDHR"). (*Id.*) During the IDHR proceedings, the Bank denied any wrongdoing. (*Id.* ¶ 36.) According to Plaintiffs, the Bank, however, admitted to advancing funds into their account to eliminate any technical defenses that the Plaintiffs would

have in the event of another foreclosure action. (*Id.* ¶ 37.) Plaintiffs also allege that the Bank produced a fabricated letter dated January 8, 2004 during the IDHR proceedings. (*See id.* ¶¶ 38-40.) They allege the Bank created this letter to "protect itself from its failure to properly service the loan and to further deny the [Plaintiffs'] right to a workout agreement." (*Id.* ¶ 40.) Plaintiffs' HUD complaint was dismissed in December 2007. (*Id.* ¶ 41.)

On January 29, 2008, Plaintiffs allegedly sent "another qualified request" to the Bank seeking clarification regarding the "payment amounts" stated in the September 2006 letter from the Bank's attorneys. (*See id.* ¶¶ 31, 43.) This request also sought "copies of agreements from [the Bank] and documents related to the purported advancement of funds." (*Id.*) On March 20, 2008, Plaintiffs sent the Bank a follow-up letter requesting a response to their January 29, 2008 letter. (*Id.* ¶ 45.) Eight days later, Plaintiffs sent a second follow-up letter "asking for a response to their request for information requested in the January 2[9], 2008 letter." (*Id.* ¶ 46.) In between the two follow-up letters, the Bank filed a third mortgage foreclosure action in the Circuit Court of Cook County. (*Id.* ¶ 45.) On May 1, 2008, the Bank's counsel sent a letter to Plaintiffs. (*Id.* ¶ 47.) Plaintiffs allege that this letter was unresponsive to their "qualified request" for information because it did not provide clarification regarding the loan payments due and an explanation of the advanced funds. (*Id.* ¶¶ 47-48.)

## PROCEDURAL HISTORY

On January 28, 2008, Plaintiffs filed their initial complaint, which was amended on July 29, 2008. (R.1, Compl.; R. 27, Pls.' First Am. Compl.) The amended complaint ("complaint")

4

contains three claims for relief against the Bank.[3] (R. 27, Pls.' First Am. Compl.) First, Plaintiffs assert a RESPA claim arising out of the Bank's alleged deficiencies in "servicing and responding to qualified written requests." (*Id.* ¶ 53.) Additionally, Plaintiffs claim violations of the FHA for both alleged discriminatory conduct and retaliatory behavior. (*Id.* ¶ 57.)

On August 29, 2008, the Court dismissed the complaint, without prejudice, due to Plaintiffs' failure to file a responsive pleading to a previously filed motion to dismiss. (R. 34, Tr. Proceedings on Aug. 29, 2009.) Plaintiffs subsequently moved to reinstate their dismissed claims; the Court granted their motion on August 26, 2009. (R. 42, Mot. to Reinstate; R. 44, Minute Order.) On September 16, 2009, the FDIC moved to dismiss the complaint pursuant to Rule 12(b)(6). (R. 45, Mot. to Dismiss.)

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal where a party has failed to state a claim. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v.*

---

[3] Plaintiffs' second claim for relief actually contains two causes of action under distinct statutory provisions. (*See* R. 27, Pls.' First Am. Compl. ¶¶ 55-61.) As such, the Court will treat the complaint as having alleged three, rather than two, claims for relief.

*Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

## ANALYSIS

I.  **RESPA Claim**

Congress enacted RESPA to provide home buyers with greater information regarding the nature and costs of the real estate settlement process and to protect them against unnecessarily high settlement charges. 12 U.S.C. § 2601. *See* S. Rep. 93-866 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6546, 6547-49. In addition to protections involving "settlement services,"[4] the statute also provides borrowers certain protections during the "servicing" of any "federally related mortgage loan." 12 U.S.C. § 2605. Plaintiffs allege that the Bank violated RESPA by inadequately "servicing and responding to qualified written requests." (R. 27, Pls.' First Am. Compl. ¶ 53.) Specifically, Plaintiffs invoke the portion of the statute which places a duty on loan servicers to respond to borrower inquiries.[5] *See* 12 U.S.C. § 2605(e)(1)(A). For this statutory duty to be triggered, the borrower must submit a qualified written request to the loan servicer. *Id.* RESPA defines a qualified written request as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that - - (i)

---

[4] RESPA defines "settlement services" as "any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement." 12 U.S.C. § 2602(3).

[5] The provision provides: "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

6

includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). To be deemed a qualified written request, the borrower's written correspondence must also request information relating to the "servicing" of the loan. 12 U.S.C. § 2605(e)(1)(A).

Plaintiffs allege they made qualified written requests on October 4, 2006, January 29, 2008, and March 28, 2008.[6] (R. 27, Pls.' First Am. Compl. ¶¶ 32, 43, 46.) The allegations in the complaint made with respect to these three requests, when read in the light most favorable to Plaintiffs, satisfy the requirements set forth in 12 U.S.C. § 2605(e)(1)(B). As FDIC argues, however, Plaintiffs' alleged qualified written requests must also relate to the "servicing" of the mortgage loan. *See* 12 U.S.C. § 2605(e)(1)(A). FDIC argues that no qualified written request has been alleged because the complaint does not aver a "request for 'servicing' information covered by 12 U.S.C. § 2605(i)(3)." (R. 45, FDIC Mem. at 7.) RESPA makes clear that "servicing" involves two possible actions by the loan servicer: (1) "*receiving* any scheduled periodic payments from a borrower pursuant to the terms of any loan"; and (2) "*making* the payments of principal and interest and such other payments with respect to the amounts received

---

[6] Plaintiffs also allege that "[o]n March 20, 2008, [they] sent a second letter asking for a response to their January 29, 2008 letter." (R. 27, Pls.' First Am. Compl. ¶ 45.) It is unclear whether Plaintiffs allege that this letter is a qualified written request. To the extent they make such a claim, the Court finds that Plaintiffs' March 20, 2008 letter is not a qualified written request as Plaintiffs' allegations fail to indicate that this letter provided "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Plaintiffs merely allege that this letter "ask[ed] for a response to their January 29, 2008 letter"; the complaint does not aver that this letter provided the detail required by RESPA in order for a correspondence to be deemed a qualified written request.

7

from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3) (emphasis added).

Here, Plaintiffs' "qualified written requests" involve requests for information regarding an alleged reinstatement of a defaulted mortgage loan and the amounts of delinquent mortgage payments due. (*See* R. 27, Pls.' First Am. Compl. ¶¶ 31, 32, 43, 46.) These requests do not fall under either of the statute's definitions of "servicing." First, Plaintiffs' requests do not relate to the servicer's receipt of a "scheduled periodic payment from a borrower pursuant to the terms of the loan." *See* 12 U.S.C. § 2605(i)(3). Their requests for information clearly do not involve an inquiry into the servicer's receipt of a scheduled payment; rather, they relate to information about the status of a defaulted mortgage loan and delinquent mortgage payments. Similarly, the second possible definition is inapplicable because Plaintiffs' letters do not request information regarding the servicer making any payments with funds received from the borrower pursuant to the terms of the loan. *See id.* Thus, because their information requests do not relate to the "servicing" of the loan, as the term is defined by RESPA, Plaintiffs' October 4, 2006, January 29, 2008, and March 28, 2008 letters are not qualified written requests. *Cf. MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 900-01 (N.D. Ill. 2000) (letter seeking information about the validity of the loan and mortgage documents not a qualified written request); *Champlaie v. BAC Home Loans Servicing, LP*, S-09-1316 LKK/DAD, 2009 WL 3429622, at *7 (E.D. Cal. Oct. 22, 2009) (letter requesting loan rescission not a qualified written request because it does not request information related to servicing); *Keen v. Am. Home Mortgage Servicing, Inc.*, 2-09-01026 FCD/KJM, 2009 WL 3380454, at *7 (E.D. Cal. Oct. 21, 2009) (letter "simply disputing the validity of the loan and not its servicing" is not a qualified written request). Without a qualified written request, the duty

RESPA places on loan servicers is not triggered. Accordingly, the Court dismisses Plaintiffs' RESPA claim under Rule 12(b)(6).

## II. FHA Claim

Plaintiffs also allege two violations of the FHA. (R. 27, Pls.' First Am. Compl. ¶ 57.) First, they argue that the Bank's alleged actions violate 42 U.S.C. § 3605, which prohibits discrimination in the availability and terms of real estate-related transactions based on "race, color, religion, sex, handicap, familial status, or national origin."[7] *Id.* The statute defines a real estate-related transaction as any of the following: (1) "[t]he making or purchasing of loans"; (2) "providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling"; (3) "providing other financial assistance . . . secured by residential real estate"; or (4) "[t]he selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b).

Here, Plaintiffs allege that the Bank impermissibly discriminated against them by, among other things, "[r]epeatedly ignoring [their] requests for information and request for a workout and other loan documentation," "causing them to run around to various locations for a face-to-face meeting other than the branch office of [the Bank]," and "making rude and intimidating comments." (*See* R. 27, Pls.' First Am. Compl. ¶¶ 59(a)-(j).) Plaintiffs implicitly suggest that they were discriminated against on account of race. (*See id.* ¶¶ 55-59.) To state an actionable claim under this provision of the FHA, Plaintiffs must allege that they attempted to engage in a

---

[7] The statute specifically provides: "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).

9

real estate-related transaction. *See, e.g., Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056-57 (8th Cir. 2003) (citing *Michigan Prot. and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir. 1994)). Plaintiffs fail to do so. The allegations in the complaint all involve post-default action (or inaction) on the part of the Bank. As such, it is evident that Plaintiffs were not attempting to engage in a residential real estate transaction as the term is defined in the FHA. Accordingly, Plaintiffs' claim for relief under 42 U.S.C. § 3605 is also dismissed for failure to state a claim.

Plaintiffs' second FHA claim is brought under 42 U.S.C. § 3617, which makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of certain rights granted or protected by the FHA.[8] While unclear from their complaint, Plaintiffs appear to argue that they have been retaliated against for exercising rights under the FHA's antidiscrimination provision, 42 U.S.C. § 3605. (*See* R. 27, Pls.' First Am. Compl. ¶¶ 55-61.) As discussed above, Plaintiffs have not alleged a claim under 42 U.S.C. § 3605. Thus, their claim for retaliation, which is predicated upon exercising rights protected by 42 U.S.C. § 3605, also fails. Accordingly, Plaintiffs' 42 U.S.C. § 3617 claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 45) is GRANTED. The Clerk of the Court is directed to enter final judgment for the defendants.

---

[8] The statute specifically provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

**Entered:** _/s/ Ruben Castillo_

Judge Ruben Castillo
United States District Court

**Dated:** November 30, 2009